# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **DONTA BETTS, 59165-037,** | * | |
| **Petitioner,** | * | **CIVIL ACTION NO. JFM-17-1748** |
| v. | * | **CRIMINAL NO. JFM-15-0557** |
| **UNITED STATES OF AMERICA,** | * | |
| **Respondent.** | * | |

\* \* \* \* \* \* \*

## GOVERNMENT'S OPPOSITION TO PETITIONER'S MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE

The United States of America, by and through its attorneys, Stephen M. Schenning, Acting United States Attorney for the District of Maryland, and Matthew J. Maddox, Assistant United States Attorney, respectfully submits the following opposition to Petitioner's *pro se* Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 based on: (1) ineffective assistance of counsel for not pursuing a direct appeal; (2) Dean v. United States, 137 S. Ct. 1170 (2017); (3) ineffective assistance of counsel for not challenging Petitioner's "juvenile enhancement"; and (4) ineffective assistance of counsel for not challenging the sentence.

The Court should deny Petitioner's Motion as to the second ground because the Supreme Court case upon which Petitioner relies is inapplicable to the present case and does not support the relief requested.

The Court should conduct a hearing to resolve disputed facts upon which the first, third, and fourth grounds are based. Specifically, the government disputes Petitioner's bare and self-serving allegation that he requested that his counsel file a notice of appeal and that counsel's performance was deficient and prejudiced Petitioner in not filing a notice of appeal.

1

I.      **PROCEDURAL BACKGROUND**

On October 22, 2015, a Grand Jury in the District of Maryland returned a three-count Indictment against Donta Betts (hereinafter "Petitioner"), charging him with obstruction of law enforcement officers during a civil disorder, in violation of 18 U.S.C. § 231(a)(2); making a destructive device, in violation of 26 U.S.C. § 5861(f); and attempted arson, in violation of 18 U.S.C. § 844(i). *United States v. Betts*, No. 1:15-cr-00557, Dkt. 8 (Indictment).

The parties subsequently entered into a plea agreement in which Petitioner agreed to waive indictment and plead guilty to a two-count Criminal Information charging him with making a destructive device, in violation of 26 U.S.C. § 5861(f) (Count One); and discharge of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(iii) (Count Two). The parties also agreed that a total sentence of imprisonment within the range of 14 years to 16 years was the appropriate disposition of the case pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure. Dkt. 34-1 (Plea Agreement) at 6. The Criminal Information was filed on March 16, 2016, Dkt. 28, and the Petitioner pled guilty to both counts on March 18, 2016. Attachment A (Transcript of Sealed Rearraignment Hearing) at 3:23-4:6.

The sentencing hearing was held on June 24, 2016. Attachment B (Transcript of Sentencing Hearing). In a Presentence Investigation Report ("PSR"), the U.S. Probation Office determined an advisory guidelines sentence of 10 years on Count One and 10 years on Count Two, resulting in a total guidelines sentence of 20 years. Dkt. 37 at 18 (¶108). The Court agreed with the parties to vary from the sentencing guidelines and impose a lower sentence within the range of 14 to 16 years. *Id.* at 46:17. The Court sentenced Petitioner to 60 months on Count One and 120 months on Count Two, to run consecutively for a total sentence of 180 months, or 15 years. Dkt. 48 (Judgment) at 2; Attachment B at 46:22-23. The Court also imposed a three-year term of

supervised release on Count One and a five-year term of supervised release on Count Two, to run concurrently. Dkt. 48 at 3; Attachment B at 47:3-4.

Petitioner did not file any appeals following the issuance of the judgment on June 30, 2016. This Motion to Vacate, pursuant to 28 U.S.C. § 2255, was filed almost one year after his sentencing.

## II.    FACTUAL BACKGROUND

The facts of this case involve criminal conduct by the Petitioner that occurred during two separate series of events: (1) crimes committed during the riots in Baltimore, Maryland on April 27, 2015, and (2) an attempted murder by shooting committed by the Petitioner in Baltimore, Maryland on July 2, 2015, in connection with and furtherance of a prior illicit drug transaction.

### A. April 27, 2015

During the afternoon of April 27, 2015, riots and looting erupted in various parts of Baltimore, Maryland, including the area of northwest Baltimore in the vicinity of the intersection of Pennsylvania Avenue and West North Avenue. Many people participated in the riots by looting the CVS Pharmacy located in the Penn-North area. The looting and an arson committed during the rioting put the CVS Pharmacy out of business. Rioting and looting also occurred in other areas of Baltimore, including the vicinity of Mondawmin Mall in northwest Baltimore, and affected other businesses.

At approximately 4:47 p.m. on April 27, 2015, a Baltimore Police Department ("BPD") police cruiser was parked on the 1600 block of West North Avenue. At this time, Petitioner and other persons rioting in the area rocked and attempted to flip the police cruiser. At approximately 4:49 p.m., Petitioner attempted to destroy the police cruiser by fire and explosion by removing its gas cap, placing a piece of flammable material into its fuel filler pipe, and igniting the material.

3

(Another individual acted to prevent the fire by removing the flammable material from the fuel filler pipe.) Between approximately 5:27 p.m. and 5:34 p.m., Petitioner participated in the looting of the CVS Pharmacy by entering the store through its main front entrance and removing certain merchandise from the store.

By approximately 5:30 p.m., a line of BPD police officers had formed across the 2500 block of Pennsylvania Avenue, facing the intersection with West North Avenue and the main front entrance of CVS Pharmacy. By approximately 5:44 p.m., participants in the riot had placed an assemblage of metal propane cylinders and bag of charcoal briquettes on Pennsylvania Avenue near the main front entrance of the CVS Pharmacy. The assemblage of propane cylinders and charcoal briquettes was placed between West North Avenue and the line of police officers that had formed across Pennsylvania Avenue. At approximately 5:46 p.m, anticipating the advance of the line of police officers to quell the looting, the Petitioner produced and used of an incendiary and explosive device in an effort to deter and obstruct the police officers. He ignited a roll of toilet paper, placed the burning object onto the assemblage of propane cylinders and charcoal briquettes, squirted lighter fluid onto the pile of incendiary materials, and thereby caused a substantial flame to burn on and among those materials. Petitioner then fled the area. At approximately 5:58 p.m., a large flame exploded from the incendiary device. The explosion resulted in flying debris from the propane cylinders, including large metal fragments, and blast effects felt by bystanders.

Once apprehended, Petitioner stated that it was his intent to prevent the police assembled across Pennsylvania Avenue from coming any closer while the looting and rioting was ongoing. Petitioner never made any registration or obtained any approval required by the National Firearms Act for the making of a firearm or destructive device. Still photographs and video evidence obtained during the investigation also revealed that Petitioner threw objects at police officers in

the vicinity of Mondawmin Mall and attempted to tip over a Maryland Transit Administration transport vehicle while gesturing to encourage others to join him in the Penn-North area during the riots.

**B. July 2, 2015**

On a date prior to July 2, 2015, Petitioner sold four pills or capsules of heroin to a female (hereinafter "Victim") at a location in Baltimore, Maryland. Petitioner expected to be paid $40 for the heroin but Victim paid only approximately $20. The next time Petitioner encountered Victim was during the morning of July 2, 2015. Victim was in the driver's seat of a vehicle with a passenger in southwest Baltimore when Petitioner saw Victim. Petitioner approached the vehicle with a firearm in hand and discharged the weapon in Victim's direction, intending to kill her in retaliation for having been cheated in the prior drug transaction. Victim was shot in the area of her left hip but managed to drive away from the area. As a result of the shooting, Victim sustained severe injuries to her left leg and was treated at the Shock Trauma Center at University of Maryland Hospital in Baltimore.

Petitioner was arrested for the shooting on July 7, 2015, and detained. On July 19, 2015, Petitioner made a telephone call to a friend, which was recorded by the Maryland Department of Public Safety & Correctional Services. During the call, Petitioner provided the name of the shooting victim. Petitioner asked his friend to relay that information to others and to instruct them to obtain a signed affidavit from Victim stating that Petitioenr did not shoot her. During the same call, Petitioner admitted to his friend that he did indeed shoot Victim.

**III. PETITIONER'S CLAIMS**

Petitioner now claims that his sentence should be set aside, vacated, or reduced on the following grounds: (1) ineffective assistance of counsel for not pursuing a direct appeal; (2) *Dean*

*v. United States*, 137 S. Ct. 1170 (2017); (3) ineffective assistance of counsel for not challenging Petitioner's "juvenile enhancement"; and (4) ineffective assistance of counsel for not challenging the sentence. Dkt. 51 (filed on June 26, 2017) (hereinafter "Mot."). Ground Two lacks merit and should be denied. Disputed factual issues bearing on Grounds One, Three, and Four remain and warrant an evidentiary hearing.

IV. **ANALYSIS**

    **A. Petitioner's Claims of Ineffective Assistance of Counsel (Grounds One, Three, and Four)**

        **1. Standard of Review**

The touchstone for evaluating a defendant's claim of ineffective assistance of counsel is whether the conduct of her attorney fell "within the range of competence normally demanded of attorneys in criminal cases." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Court instructed that claims of ineffective assistance of counsel are decided by the following two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Id.*

In evaluating the first prong of the *Strickland* test, courts should make every effort to evaluate attorney conduct from counsel's perspective at the time. 466 U.S. at 690. Moreover, petitioners must overcome a strong presumption of competence with respect to the actions of defense counsel. *See Roach*, 757 F.2d at 1476. In this regard, the Supreme Court has recognized

the following:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence. . . . [A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

*Strickland*, 466 U.S. at 689 (citing *Mitchel v. Louisiana*, 350 U.S. 91, 101 (1955)).

The second prong of *Strickland* requires the petitioner to show that counsel's conduct actually prejudiced the defendant. 466 U.S. at 687. In order to satisfy this prong, the petitioner must establish that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694. Unless the petitioner makes this showing, it cannot be said that the conviction or sentence "resulted from a breakdown in the adversary process that renders the result unreliable," *id.* at 687, and the conviction or sentence should stand. If a petitioner fails to meet her "burden of proving *Strickland* prejudice," then "a reviewing court need not consider the performance prong." *Fields v. Maryland*, 956 F.2d 1290, 1297 (4th Cir. 1992); *accord Strickland*, 466 U.S. at 697.

In the context of plea agreements, the Supreme Court has slightly modified the *Strickland* test. *Hill v. Lockhart*, 474 U.S. 52, 57–59 (1985). While the first prong of *Strickland* remains the same, the second prong requires the petitioner to show that the alleged ineffective assistance affected the outcome of the plea process. 474 U.S. at 58–59. The petitioner must establish that "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* If a petitioner fails to satisfy the prejudice requirement, then a reviewing court need not consider whether the alleged erroneous advice was constitutionally ineffective assistance of counsel. *See Hill*, 474 U.S. at 60 ("We find it unnecessary to determine whether there may be circumstances under which erroneous advice by counsel . . . may be deemed constitutionally

7

ineffective assistance of counsel, because in the present case we conclude that petitioner's allegations are insufficient to satisfy the *Strickland v. Washington* requirement of 'prejudice.'").

Prejudice may be established where counsel's unprofessional conduct results in a defendant losing an appellate proceeding, even when the defendant is party to a plea agreement that includes an appeal waiver. *United States v. Poindexter*, 492 F.3d 263, 269 (4th Cir. 2007). "[A]n attorney renders constitutionally ineffective assistance of counsel if he fails to follow his client's unequivocal instruction to file a timely notice of appeal even though the defendant may have waived his right to challenge his conviction and sentence in the plea agreement." *Id.* at 265. This is true even when filing a notice of appeal would be "harmful to the client's interests." *Id.* at 273.

Under certain circumstances, defense attorneys can be constitutionally ineffective for failing to file an appeal, even absent an order to do so, when they do not consult their client about the advantages and disadvantages of filing an appeal. *Roe v. Flores-Ortega*, 528 U.S. 470, 478 (2000). Specifically, "counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *United States v. Cooper*, 617 F.3d 307, 313 (4th Cir. 2010) (quoting *Flores-Ortega*, 528 U.S. at 480). When an attorney "establishes expectations [with a client] about the consequences that are likely to follow from a guilty plea," counsel is not "professionally unreasonable" in not consulting the client about an appeal "if (1) those expectations are met, (2) the defendant does not express any interest in appealing, and (3) counsel concludes that there are no nonfrivolous grounds for appeal." *Cooper*, 617 F.3d at 314. When an attorney consults a client about an appeal, "the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only

8

by failing to follow the defendant's express instructions with respect to an appeal." *Flores-Ortega*, 528 U.S. at 480.

### 2. Petitioner's Allegations That Counsel Was Ineffective For Not Filing a Notice of Appeal

In his Motion, Petitioner claims ineffective assistance of counsel for three actions that defense counsel allegedly did not take: "pursuing a Direct Appeal" (Ground One); "challenging Petitioner's Juvenile enhancement" (Ground Three); and "challenging the sentence" (Ground Four). In Ground One, Petitioner alleges that his counsel was ineffective for not pursuing a direct appeal. He alleges that he "requested counsel to appeal his case on Direct Appeal on the day of sentencing, but counsel refused to do so[,] [t]hereby prejudicing the Petitioner and causing ineffective assistance of counsel," citing *Roe v. Flores-Ortega*, 528 U.S. 470 (2000). Mot. at 4. In Ground Three, Petitioner alleges that he "requested to counsel that he appeal his Juvenile enhancements," that "counsel simply refused to do so[,]" and that counsel was therefore ineffective. Mot. at 7. In Ground Four, Petitioner alleges that "[c]ounsel was ineffective for not challenging the 180 month sentence for 3 pills of Heroin, nor possession of a weapon at all." Mot. at 8.

No notice of appeal was filed in this case. Petitioner entered into a plea agreement in which he waived his appellate rights, was both convicted and sentenced in accordance with that agreement, and fails to identify any non-frivolous grounds for appeal. Therefore, the record establishes that no rational defendant in Petitioner's position would seek an appeal in this case. However, the government submits that a hearing will be necessary to determine factual issues that bear on the merits of the Motion, including whether counsel consulted Petitioner about an appeal and whether Petitioner instructed counsel to file a timely notice of appeal.

### a. *No Rational Defendant In Petitioner's Position Would Seek an Appeal Because*

### *Petitioner Knowingly, Voluntarily, and Intelligently Waived His Appellate Rights For a Substantial Benefit At Sentencing.*

Although no timely notice of appeal was filed in this case, it is clear from the record that a rational defendant in Petitioner's position would not seek an appeal. In determining whether a rational defendant would want to appeal, the court should consider "whether the defendant's conviction followed a trial or a guilty plea; whether the defendant received the sentence bargained for as part of the plea; and whether the plea expressly reserved or waived some or all appeal rights." *Cooper*, 617 F.3d at 313.

Here, Petitioner's conviction followed guilty pleas made in connection with an agreement with the government under Rule 11(c)(1)(C). Dkt. 34-1 at 6. In that agreement, Petitioner expressly waived all rights to appeal his conviction and any lawful sentence within the bargained-for range of 14 to 16 years. *Id.* at 7-8. The appeal waiver provisions are contained in Paragraph 18 of the plea agreement:

> 18. In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:
>
> The Defendant waives any and all motions, defenses, probable cause determinations, objections which the Defendant could assert to the Criminal Information or the Indictment, or to the Court's entry of judgment against the Defendant and imposition of sentence upon the Defendant consistent with this agreement.
>
> The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction.
>
> The Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except that the Defendant reserves the right to appeal any term of imprisonment that exceeds 16 years' imprisonment, and this

> Office reserves the right to appeal any term of imprisonment that is below 14 years' imprisonment.
>
> * * *
>
> e. If the Defendant files a notice of appeal, notwithstanding this agreement, the Defendant agrees that this case shall be remanded to the district court to determine whether the Defendant is in breach of this agreement and, if so, to permit the United States to withdraw from the plea agreement.

*Id.*

In signing the plea agreement, Petitioner specifically affirmed that he read the entire agreement, "carefully reviewed every part of it with [his] attorney[,]" understood it, and voluntarily agreed to it. *Id.* at 9. At the rearraignment hearing on March 18, 2016, the Court specifically reviewed this statement with Petitioner, and Petitioner affirmed his careful review and understanding of the entire agreement. Attachment A at 11:23-12:11. The Court also reviewed all salient aspects of the plea agreement with Petitioner and specifically drew the parties' attention to the waiver provision. *Id.* at 17:5-15. Petitioner affirmed that he had entered into the agreement without force or threat. *Id.* at 11:20-22. In short, Petitioner waived his appellate rights knowingly, voluntarily, and intelligently.

The knowing and voluntary nature of Petitioner's entry into the plea agreement is additionally evidenced by defense counsel's active participation in the proceedings. For instance, after government counsel reviewed the factual stipulation made in connection with the plea agreement, Petitioner's counsel voiced disagreement with a portion of the factual statement and advocated for its omission. *Id.* at 24:4-12. Moreover, in the plea agreement itself, and then multiple times during the guilty plea colloquy, Petitioner acknowledged that he was satisfied with the representation of his attorney. *Id.* at 4:22-24, 12:7-10. Additionally, at no time during the plea colloquy did Petitioner or his attorney indicate a lack of understanding about the scope of the

waiver-of-appeal provisions in the plea agreement, or of any other part of the plea agreement.

As part of the plea agreement containing the waiver of appellate rights, Petitioner received a substantial benefit at sentencing in the form of a Rule 11(c)(1)(C) agreement with the government to a below-guidelines sentence. The applicable sentencing guidelines in this case prescribed a total prison sentence of 20 years—that is, the statutory maximum of 120 months on Count One, and the statutory minimum of 120 months on Count Two, to run consecutively. Dkt. 37 at 18 (¶108). In the plea agreement, Petitioner bargained for a substantially lower sentence—specifically, a total prison sentence between 14 and 16 years. *Id.* The 15-year sentence Petitioner received was the one that he bargained for. In the absence of the agreement containing the appeal waiver, Petitioner would have likely received a higher sentence. Indeed, the Court specifically stated that certain sentencing factors prescribed by 18 U.S.C. § 3553, such as "respect for the law and deterring others, and the seriousness of the offense, clearly call for more than I'm imposing." Attachment B at 46:18-20. These factors, the Court added, "may lead to the rejection of the plea agreement." *Id.* at 46:21. But the Court ultimately accepted the agreement and imposed a downward variance from 20 years to 15 years. *Id.* at 46:17-23.

In light of the tremendous benefit at sentencing conferred on Petitioner by the plea agreement, including the appeal waiver made knowingly and intelligently, no rational defendant in his position would seek an appeal. *See United States v. Matthews*, 384 Fed. App'x 214, 217 (4th Cir. 2010) (concluding that "no rational defendant would have chosen to appeal" where defendant "expressly and voluntarily waived his right to appeal," received a downward variant sentence as a result, and "would likely have received a longer prison sentence if he chose to file a notice of appeal").

### b. No Rational Defendant In Petitioner's Position Would Seek an Appeal Because There Are No Non-Frivolous Grounds For Appeal.

Petitioner does not identify any appealable issues in this case. Indeed, there are no non-frivolous issues to appeal.

### i. Petitioner's Allegation That Counsel Did Not Arrange For a Mental Health Evaluation Is False and Is Not an Appealable Issue.

In Ground One, in connection his allegation that counsel alleged failed to follow his instruction to pursue a direct appeal, Petitioner alleges that "he is a mentally ill patient and the counsel was ineffective for not having him evaluated upon knowing so." Mot. at 4. Petitioner fails to explain how this matter constitutes a basis for an appeal of his conviction or sentence.

Notwithstanding, Petitioner's counsel did arrange for him to be evaluated and findings from that evaluation were presented to the Court at sentencing. First, the sentencing memorandum submitted by Petitioner's counsel on June 10, 2016, noted "intellectual, academic, and adaptive functioning deficiencies." Dkt. 41 at 5. The memorandum cited a neuropsychological report completed by Dr. Joette James, a licensed psychologist certified in clinical neuropsychology. Dr. James conducted a neuropsychological evaluation of Petitioner and concluded that he met diagnostic criteria for an intellectual disability. *Id.* The sentencing memorandum included an entire section summarizing portions of the report by Dr. James. *Id.* at 5-6.

The matter was raised again by Petitioner's counsel during the sentencing hearing, as counsel noted "significant intellectual and adaptive functioning deficits" and several findings from Dr. James's neuropsychological evaluation of Petitioner. Attachment B at 37:23-39:15. Specifically, Petitioner's counsel noted Dr. James's findings regarding Petitioner's difficulty connecting his behavior in "highly emotional situations" with "the future consequences of his action." *Id.* at 38:12-15. Counsel also noted Dr. James's conclusion that Petitioner "would benefit

from treatment" and, on that basis, identified a residential treatment program at FCI-Coleman that would be "an excellent match" for Petitioner. *Id.* at 38:21-39:15. As a result, the Court's sentence included a recommendation to BOP that Petitioner be placed at FCI Coleman so that he may participate in the program. *Id.* at 46:9-14; Dkt. 48 at 2. (BOP did assign Petitioner to FCI Coleman-Medium.)

In sum, Petitioner's allegation regarding the lack of a mental evaluation is false and, in any case, not a basis for appeal.

> ii. No "Juvenile Enhancement" Was Applied In This Case, and Petitioner's Sentencing Guidelines Were Correctly Calculated.

In Ground Three, Petitioner alleges that he "requested to counsel that he appeal his Juvenile enhancements," that "counsel simply refused to do so[,]" and that counsel was therefore ineffective. Mot. at 7. There was no "juvenile enhancement" in this case to appeal. Petitioner was 19 years old at the time of the offenses to which he pled guilty and for which he was sentenced. Petitioner sustained several adjudications of delinquency as a juvenile, as detailed in Paragraphs 61 through 66 of the PSR. Dkt. 37 at 11-12. However, no sentencing enhancement (*e.g.*, enhancements pursuant to the Armed Career Criminal Act or the Career Offender sentencing guidelines) was applied in this case as a result of any of Petitioner's juvenile cases.

Petitioner's juvenile adjudications were counted in his criminal history calculation in accordance with applicable sentencing guidelines. With respect to offenses in a defendant's criminal history that were committed prior to the age of 18, U.S.S.G. §4A1.2(d)(2)(A) (2015) provides that two criminal history points must be assessed for "each adult or juvenile sentence to confinement of at least sixty days if the defendant was released from such confinement within five years of his commencement of the instant offense[.]" Section 4A1.2(d)(2)(B) provides that one criminal history point is assessed "for each adult or juvenile sentence imposed within five years of

14

the defendant's commencement of the instant offense not covered in (A)."

Criminal history points arising from sentences Petitioner received as a juvenile resulted in a total of five criminal history points and therefore Criminal History Category III. Dkt. 37 at 12 (¶68). One criminal history point was counted for each of three sentences imposed within five years of April 27, 2015, the date Petitioner's instant destructive device offense was committed. *See id.* at 11-12 (¶¶63-65) (listing three juvenile adjudications for drug offenses in which probationary sentences were imposed on September 16, 2010; October 30, 2010; and April 26, 2011). Two criminal history points were counted for a sentence of commitment imposed within five years of April 27, 2015, which apparently lasted more than two years. *See id.* at 12 (¶66) (listing juvenile adjudication for robbery with a deadly weapon in which a sentence of commitment was imposed on September 29, 2011, and defendant was discharged on May 1, 2014). Even if this sentence was incorrectly calculated, at least one criminal history point would be warranted under §4A1.2(d)(2)(B). If one point had been counted instead of two, Petitioner would still receive four criminal history points and would therefore remain in Criminal History Category III.

In sum, there was no "juvenile enhancement" applied in this case, and the juvenile adjudications in Petitioner's criminal history were correctly counted and resulted in a correct sentencing guidelines calculation in this case. There was no error in the criminal history calculation to appeal and no "juvenile enhancement" to appeal.

     iii. *Petitioner's Sentence Was Lawful and In Accordance With His Plea Agreement.*

In Ground Four, Petitioner alleges that "[c]ounsel was ineffective for not challenging the 180 month sentence for 3 pills of Heroin, nor possession of a weapon at all." Mot. at 8. Petitioner states further that he "was never arrested with any drugs, nor a weapon, yet he is serving 180 months unconstitutionally." *Id.* Petitioner fails to identify any legal infirmity in his sentence.

15

The sentence was not illegal or unconstitutional. Petitioner's sentence for the destructive device offense was 60 months' incarceration, well below the statutory maximum sentence of 10 years. *See* 26 U.S.C. § 5871. Petitioner's sentence for the firearm offense was the statutory minimum sentence of 10 years' incarceration. *See* 18 U.S.C. § 924(c)(1)(A)(iii). The two sentences were imposed consecutively, as required by 18 U.S.C. § 924(c)(1)(D)(ii), resulting in a total sentence of 15 years. The Court determined the sentence based on the sentencing factors prescribed by 18 U.S.C. § 3553. Attachment B at 46:17-23. The 15-year sentence fell within the 14-to-16-year range stipulated by the parties under Rule 11(c)(1)(C).

Additionally, the facts of the case were agreed upon between the parties and supported each element of the offenses to which Petitioner pled guilty, including the elements of a drug trafficking offense as well as the use and discharge of a firearm. Specifically, Petitioner agreed that he "sold four pills or capsules of heroin to the Victim at a location in Baltimore, Maryland." Dkt. 34-1 at 12. Petitioner agreed further that approached the Victim's vehicle "with a firearm in hand and discharged the weapon in the Victim's direction, intending to kill her in retaliation for having been cheated in the prior drug transaction." *Id.* That Petitioner was not arrested with drugs or a weapon is immaterial. There was no dispute as to whether drugs and a firearm were involved in the firearm offense of which Petitioner was convicted.

For the foregoing reasons, it is evident that a rational defendant in Petitioner's position would not seek an appeal.

### c. *A Hearing Is Necessary To Resolve Remaining Issues of Fact.*

The government submits that there remain factual issues that warrant a hearing on Grounds One, Three, and Four of Petitioner's Motion. Although no rational defendant would seek an appeal in this case, Petitioner may still be entitled to relief if Petitioner "reasonably demonstrated to

counsel that he was interested in appealing" and his counsel failed to consult him about an appeal. *Cooper*, 617 F.3d at 313 (quoting *Flores-Ortega*, 528 U.S. at 480). Petitioner may also be entitled to relief if he "unequivocally instructed" his counsel to file a timely notice of appeal. *Poindexter*, 492 F.3d at 273. In his Motion, Petitioner alleges that "he requested counsel to appeal his case on Direct Appeal on the day of sentencing" (Ground One) and that he "requested to counsel that he appeal his Juvenile enhancements" (Ground Three). Mot. at 4, 7. In each instance, Petitioner alleges that his counsel "refused" to act in accordance with his instructions.

The government submits that the transcripts of the rearraignment and sentencing hearings (Attachments A and B), as well as other portions of the record, show Petitioner's counsel to have performed competently in those proceedings. Given such competent performance, the Court should view Petitioner's bare, self-serving, and unsubstantiated allegations about his counsel's refusal to follow his instructions to file a notice of appeal with some skepticism. The government indeed disputes these allegations and requests an opportunity to present evidence at a hearing on the matter.

Wherefore, the government requests a hearing to determine whether Petitioner "unequivocally instructed" his counsel to file a timely notice of appeal, *Poindexter*, 492 F.3d at 273, and related factual issues as to any consultation counsel had with Petitioner regarding an appeal and the consequences of his guilty pleas, and any demonstration or expression Petitioner made that he was interested in an appeal, *Cooper*, 617 F.3d at 313-314. *See also Poindexter*, 492 F.3d at 272 ("Under our approach, when a defendant brings a § 2255 claim based on his attorney's failure to file a requested notice of appeal, the district court should hold a hearing if it is unclear in the record whether the attorney was so instructed.").

### B. Petitioner's Claim To Relief Under *Dean v. United States* (Ground Two)

As Ground Two in his Motion, the Petitioner cites the Supreme Court's recent decision in *Dean v. United States*, 137 S.Ct. 1170 (2017), and requests a reduction of his sentence. Mot. at 5. No argument is offered as to how *Dean* provides any basis for the relief sought in the Motion. In *Dean*, the Supreme Court held that, when a statute imposing a mandatory minimum sentence is silent on the issue, a district court may consider the length of a mandatory minimum sentence that must run consecutive to the sentence for a predicate offense when determining the appropriate length of the sentence for that predicate offense. *See Dean*, 137 S.Ct. at 1176-77. The holding in *Dean* is distinguishable from the present case.

*Dean* involved a sentencing hearing that followed a trial, at which the defendant was convicted of one count of conspiracy to commit robbery, two counts of robbery, and one count of possessing a firearm as a convicted felon. *Id.* at 1174. During the sentencing hearing, defense counsel argued "that the court should consider his lengthy mandatory minimum sentences when calculating the sentences for his other counts, and impose concurrent one-day sentences for those counts." *Id.* at 1175. The court expressed its regret that it was statutorily barred from considering the mandatory minimum sentences when calculating the sentences for the other counts, and imposed a sentence in accordance with the sentencing guidelines. *See id*. The Eighth Circuit affirmed the district court, but the Supreme Court reversed, holding that sentencing courts may consider the length of a mandatory minimum sentence when determining the appropriate length of a predicate sentence for a § 924(c) conviction. *Id.* at 1175-77.

In this case, Count Two of the Superseding Information, charging a violation of 18 U.S.C. § 924(c)(1)(A)(iii), carried a 10-year mandatory minimum sentence, which must be imposed consecutively to any other sentence. *See* 18 U.S.C. § 924(c)(1)(D)(ii). The Court imposed a 10-

year sentence on Count Two and a five-year sentence on Count One, resulting in a total prison sentence of 15 years. Unlike *Dean*, this sentence was not imposed after a conviction at trial, but was imposed in accordance with the parties' agreement pursuant Rule 11(c)(1)(C) that a sentence within the range of 14 to 16 years was the appropriate disposition of this case. All negotiations regarding the length of sentencing occurred between the parties, not between defense counsel and the Court. There is no indication that the parties failed to consider the length of the 10-year mandatory minimum sentence for Count Two when deciding the appropriate total length of the sentence. Moreover, at the sentencing hearing, there was no indication that the Court failed to consider the length of the 10-year mandatory minimum sentence for Count Two when determining whether to accept the parties' Rule 11(c)(1)(C) agreement or the appropriate total length of the sentence.

Wherefore, Ground Two of the Motion should be denied.

## V. CONCLUSION

For the foregoing reasons, the government requests that the Court deny Ground Two of Petitioner's motion for relief pursuant to 28 U.S.C. § 2255 and conduct an evidentiary hearing as described above before deciding Ground One, Three, and Four.

Respectfully submitted,
Stephen M. Schenning
Acting United States Attorney

By: /s/
Matthew J. Maddox
Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 15th day of September, 2017, a copy of the foregoing Response to the Defendant's Motion to Vacate, Set Aside or Correct Sentence Under 18 U.S.C. § 2255 was served electronically through the Clerk of the United States District Court using CM/ECF, and mailed to the defendant:

Donta Betts
#59165-037
FCC-Coleman-Medium
P.O. Box 1032
Coleman, Florida 33521-1032

_____/s/_____
MATTHEW J. MADDOX
ASSISTANT U.S. ATTORNEY